Dewey, J.
Two questions, arising in the present case, have been considered by the court, and the result, as to these, will now be stated; it being understood that a decision on these points will render it unnecessary to consider the other question raised at the hearing.
1. Supposing the plaintiffs to be the deacons of the church belonging to the first congregational society in Lunenburg, do they, under the deed of trust from Mary Putnam and others, hold the meeting-house, which is the subject of controversy, exclusively for the use of the proprietors and owners of the pews therein, and to be under their entire control ? or is the same holden for the use of the pew owners, subject to the right of the first congregational parish in Lunenburg to elect the pastor, and direct as to the supply of the pulpit, from time to time ?
It is contended that the true construction of the terms of the conveyance will warrant the position, that the meeting-house is held for the sole use of the pew owners, and that they have the exclusive control over the pulpit; the legal estate being in the plaintiffs, and the pew holders being the cestui que trusts. The language used in the conveyance is undoubtedly strongly indicative of such purpose. The deed grants the estate upon the following condition: “ That the said grantees shall permit the proprietors or owners of pews in the house of public worship now erected on said premises, or that may be hereafter erected thereon, forever to occupy, hold, use and enjoy the tract of land hereby conveyed, and the house of public worship that now stands thereon, or that may be hereafter built on said premises, for the purpose of maintaining the stated public worship of God in said meeting-house, and for all such religious and parochial purposes and occasions, and for all such purposes as are usual, or may be deemed proper by the proprietors of said pews.” It *455 is argued that, by force and effect of this conveyance, another association or body of men, distinct from and independent of both the church and the parish, is to decide who shall occupy the pulpit of the meeting-house, and is clothed with the authority of electing the stated preacher to those who worship there ; and the court are, substantially, asked by this bill to enforce in chancery this power of the pew holders, and to enjoin the parish from intermeddling therewith.
It becomes necessary to look at the other facts in the case, and see how far they may and ought to avail in settling the proper construction to be given to this deed. It presents a case certainly somewhat unusual, that the right to select the public teacher should be thus vested in the hands of a body of men who do not constitute the parish, and may embrace compara tively a small number of the entire members thereof, to the ex elusion of the regularly constituted and organized parish. Cases often occur, in the larger towns and cities, of religious societies composed solely of pew owners, and having no other test of membership than that of being pew holders. But this religious society was of a different character, originally a territorial parish, and acting for a long time under the town organization, and subsequently, upon the creation of other parishes, within the town of Lunenburg, organizing itself as the first congregational society in that town. As such society, it had heretofore elected its pastor; it had proceeded to erect a new meeting-house ; had received, by a parol gift, the land on which the house was erected ; had voted to sell the old meeting-house, and appropriate the proceeds thereof towards the payment of expenditures for the new; had sold pews in the new house, and done various other acts, all indicating the general control and authority over the subject to be vested in the parish, and that the pews, although they became the property of individuals, were to be held subject to the usual authority and power, vested in the parish at large, to elect their pastor, and direct as to the occupation of the pulpit of the new meeting-house. And such seems to have been the practical construction given to the conveyance, by all parties, from its date to the year 1840. Taking these circumstances into view, *456 all of which were known to the parties to the conveyance, and in reference to which they may be supposed to have acted, and keeping in view the peculiar character of the trust property, the court are of opinion, that the proper construction, to be given to the deed of Mary Putnam and others, is this; that it was intended to vest the conveyed premises in the grantees, in trust for the use of the pew holders, so far as effectually to secure to them the full and free use and enjoyment of their several pews, on all occasions of public worship, and on all such other occasions as the pew holders might déem it proper that the house should be opened ; but leaving to the parish at large, as before, the right of electing the officiating clergyman. This deed, we think, is to be construed with reference to its subject matter, and to the usages and customs of religious societies ; and these, we are to suppose, were regarded by the parties to the conveyance, unless the language of the deed plainly imports the contrary.
The officers of the church belonging to the first congregational society in Lunenburg are made grantees. The grant is to them and their successors in the office of deacons of such church. This church is of course the church connected with the first congregational society. We cannot suppose that it was the intent of the grantors to abrogate or annul the power and authority of the parish in the matter of selecting a religious teacher, and to vest the same exclusively in the pew holders. We think the words of the trust deed do not necessarily require such construction ; but that the same may be and ought to be taken to mean that the pew owners are to use and enjoy their pews under such ministry as shall be provided by the parish, if such provision be made by the same.
2. The farther question then arises, which of the two organizations, claiming to be the first congregational society in Lunen-burg, is legally authorized to act as such ? This depends upon the opinion of the court as to the proper construction of the provisions of the Rev. Sts. c. 20, in relation to the calling of parish meetings. Both parties before us have proceeded, in the measures they have adopted for calling a parish meeting, upon *457 the assumption that, for want of necessary parish officers to call such meeting, it was a suitable case to proceed under a warrant, to be issued by a justice of the peace, appointing the time and place of such meeting ; and this we suppose to have been correct. In this state of things, certain individuals, more than five in number, and members of the parish, applied to a justice of the peace for the county, representing that “ the parish was not duly organized according to law, both from the want of officers legally chosen, and many other causes,” and requested the said justice to appoint a time and place for a meeting of the parish, to organize themselves as a corporation, by acting on the several articles stated in their application. Thereupon a warrant was issued, bearing date November 29th 1839, directing such meeting to be held on the 21st of December 1839, requiring the members of the parish to assemble on that day, to act on the various articles stated in the said warrant, being articles relating to the choice of officers, the manner of calling future meetings, the mode in which persons may become members of the parish, and the appointment of a committee to superintend the meetinghouse. The proceedings under this warrant were conducted, it seems, under the forms prescribed by the Rev. Sts. c. 20, <§.<§> 26, 27, 28, and being prior in time, if authorized by law, the committee in relation to the meeting-house, appointed by that meeting, and acting under the votes of that meeting, would be the legally constituted committee of the parish, and the organization under which they have acted would be the true parish.
Another portion of the members of this parish, more than five in number, assuming the proceedings of the meeting, held on the 21st of December 1839, to be wholly irregular, by reason of the form of the application, and of the proceedings thereon being had under the <§> 26 of the statute, made application to another justice of the peace, under the provisions of <§, 17 of the same statute, to call a meeting of the members of the parish ; and he thereupon issued his warrant for such meeting to be holden on the 23d of March 1840, at which time various individuals, members of the parish, assembled and pro *458 ceeded to elect parish officers, and to instruct the persons chosen members of the prudential committee to take possession of the meeting-house, &c.; and these proceedings, throughout, were conducted under the provisions of said 17th section ; and those, who claim rights under the votes of this meeting of March 23d 1840, insist that this was the only statute provision applicable to the state of the parish, and in pursuance of which any legal meeting could have been called by a justice of the peace upon application of five or more of the members of the parish.
That the provisions of the 17th section are applicable to the purposes for which these meetings were called, and would have furnished full authority for calling a meeting of the parish, in the state of things then existing, seems to be quite clear. Those provisions are in these terms: “In case the assessors or committee of any parish or religious society shall unreasonably refuse to call a meeting, or if there are no assessors or committee qualified to call one, any justice of the peace for the county, upon the application of five or more of the qualified voters, may call a meeting in the same manner as a justice of the peace is authorized to call a town meeting.” But the question then arises, whether this be the only mode of call ing a meeting of a parish once organized, but where, from the want of proper officers, or by reason of their refusal to act m the matter, it becomes necessary to make application to a justice of the peace for a warrant calling such meeting. The 26th section is in these words: “Any parish, which, from the want of officers, or any other cause, may be unable to assemble in the usual manner, and any religious society, that is not incorporated, provided they contain respectively ten or more qualified voters, may organize themselves as a corporation, in the manner and for the purposes expressed in the following sections,” viz. <§,<§, 27 & 28, which provide that a justice of the peace maj issue his warrant for calling such meeting, and also direct tne mode of proceéding in such cases.
The general object and purpose of <§><§> 26, 27, 28, would seem to be, to provide for the organization of religious societies *459 not incorporated, or that had never been organized ; and it is contended by the plaintiffs in this bill, that these sections are exclusively confined to the calling of meetings for such original organization. But these sections contain provisions beyond oases of that nature, and of so plain and direct import, so obviously embracing the case of a parish unable to assemble for the want of officers, that we have not felt ourselves authorized to give to them the restricted construction contended for, though we are fully aware of the force of the argument arising from the improbability that the legislature should have made a second and dissimilar provision on the same subject, in the same chapter of the statutes. The two modes of calling such meetings, as provided in <§> 17, and in <§>■§> 26, 27, 28, do not very materially differ. The principal and perhaps the only distinction will be found to be, that at a meeting called under <§, 17, the parish clerk would preside at the opening thereof, and at a meeting called under the other sections, a justice of the peace would preside at the opening of the meeting. Both these modes of calling a meeting of the members of the parish being legal, which is to have precedence, and be held to have au thoritative control, in the matters of the parish ? We think it is the meeting first appointed and holden. This seems to be the necessary effect of the two provisions for calling such meeting. Each being legal and proper in itself, that which first takes place must have priority, and will supersede the authority to call a meeting in the other mode pointed out by the statute. It is a case where the legal maxim, qui jprior est tempore potior est jure, well applies. The result is, therefore, that the meeting of the parish, holden on the 21st of December 1839, was legally appointed, and the proceedings under it superseded all occasion or authority for the appointment of the second meeting on the 23d of March 1840, and the doings of such latter meeting are of no effect.

Bill dismissed.